U.S.A. v. Mejia-Gonzalez is on submission. Go ahead, sir. Thank you. May it please the Court, Robert Culp, Assigned Counsel for Mr. Gilliam. I was not involved in the trial proceedings in this case. I'll try to be succinct, I realize it's been a long morning. I intend to confine my remarks to the Fourth Amendment issues that I've raised in the brief and otherwise rest on the papers. And I will try to be succinct. I had to check my cell phone downstairs, but usually I have it with me all the time and it's on. And I think there's millions of people in this country doing the same thing. And as you know, the government and the phone companies sort of jointly have this power to ping a phone that's turned on and to find out exactly where that phone is. And so right now my provider could ping me and tell someone, he's at 40 Foley Square, go get him. It's quite a power. Only if there's a reason to go get him. Yes, yes. I understand. The government was good enough in their brief to sort of concede for the sake of argument, I think is the way to put it, that a warrant should be required for this sort of procedure to take place. And I appreciate that. And then they say that there's two exceptions that apply here that uphold what happened in this case. One, of course, is the exigent circumstances exception and the other is the good faith exception of the exclusionary rule. I have to overcome both to persuade you. It's a tough burden I recognize and I'm not here to say that there's nothing potentially exigent at least or exigent about a minor child being with someone engaging her in prostitution. What I am saying is in this case that I don't think the exigent circumstances were properly presented and verified. You've got the one-page form that's in the appendix that was sent to the provider and they checked off a box that said exigent circumstances or I think they circled actually, said exigent circumstances and then there's a one-line sentence, we're investigating a child who's being prostituted or words to that effect. They don't... Anything inaccurate about that? No. No. No. No. No. It's incomplete. I guess that's what I'm saying. It doesn't say that she's a minor but that's not the gist of my point. What's missing is the basis for why the exigent circumstances are there and the basis for the request to begin with. I don't see anywhere and it's why I cited the case Tenenbaum, any statement that this is why we can't go get a warrant or this is what makes this exigent and if we're going to deputize the phone companies to sort of act as, I don't know what, as intermediaries for this awesome power and the statute gives them the opportunity to in good faith determine that there are exigent circumstances, I think they should say more than just that one line. They should say this is why we can't go to a judge and they should say this is the basis of our claim that there's exigent circumstances in this particular case. They did neither. Just the one line. I don't think it should be that easy. Turning to the good faith exception, the exclusionary rule, I think that's a dangerous exception to apply in these cases. The government relies on the Illinois versus Kroll case, which after Leon had put in this concept of good faith reliance on a statute, that's a very different case. That was a statute that provided for unannounced inspections of highly regulated auto repair shops and so forth. This is something that applies, this case involves a much more broad and universal power to basically track down anyone who's carrying a cell phone that's turned on. I disagree with the government that the statute that they cite actually applies. I know there's a lot of cases that go back and forth, but just for the sake of saying it, I don't think that this is a request for records or information. To me, records or information exist previously. This is a request to ask the phone company to do something affirmatively for the government. I think that makes a difference. There are cases that support that. In terms of the Fourth Amendment, the issue is whether, okay, is there a warrant requirement at all? I think if you're going to have a good faith reliance on a statute, the statute ought to apply. I don't think it does. Like I've said, I distinguish Kroll. I think it's a very different situation. The unreported case that the government cited McCullough is one of those existing records cases. I distinguish it on that basis. My position— You're not asking us—do I understand this correctly? You're not asking us to necessarily rely on the Stored Communications Act or the Penn Register Act, right? Well, I don't think it matters. I think the government makes that point, and we do agree, given their concession that, at least for the sake of this argument, that there is a warrant requirement. I'm not sure that that matters, which of those acts apply. Is there— Neither of them has a suppression remedy in them. Exactly. I'm going to the Fourth Amendment for that. All right. So we're agreed that neither of these statutes has a suppression remedy? No. No. And I believe counsel below tried to migrate over to Title III to get a suppression remedy. I'm not making that argument. I'm making my argument under the Fourth Amendment for the suppression remedy, and I've made my points. They're difficult, especially on exigent circumstances, that these exceptions should not apply. Now, on the other—my other Fourth Amendment issue, there's two parts of that. One is Mr. Gilliam was arrested for assaulting a police officer in the situation where the officer said, freeze, and didn't put him under arrest. And then Mr. Gilliam went through an apartment door, and in closing the door, the officer's foot got caught in the door, and the officer suffered injuries. And there's different accounts of this. The officer says that, you know, he slammed it on my door. He was fleeing. I was badly injured. Mr. Gilliam, in an affidavit that was submitted, said, I just closed the door, and his foot got stuck in it, which I don't think's an assault. I guess my point that I'm making is that there are divergent accounts here. Your point is that an evidentiary hearing was required. Yes. Yes, exactly. And then on the second part of that aspect of the Fourth Amendment motions, I concede that the Supreme Court, I think, has been pretty clear on this, that when there's—you don't rely simply on the subjective reason the arrest was originally made, which here was assault, that you can also supply probable cause from another offense. And, of course, they argue that there was also probable cause to arrest him for the underlying activity for which he was prosecuted in this case. And my points there are that they admit that they didn't know for sure whether it was Gilliam or not. That's part of probable cause, that it's the person you're looking for. And then the second part is the basis relying on the mother's subjective opinion that her daughter was engaged in this activity. But if you look at the underlying documents, they don't say what the basis of that is. So I see that my time is up, and I appreciate the opportunity. You've reserved some time. We'll hear from the government. Ms. Greenberg. May I please the Court? My name is Christy Greenberg, and I represent the United States. I'll start—I'll also confine my remarks today to the Fourth Amendment issues. The district court's holding— The event you prevail, is it your view that we have to address or should address the two statute—the issues under the two statutes? If I prevail regarding the exigent circumstances argument? If you agree that the exigent circumstances exception to the Fourth Amendment applies, you don't have to necessarily look to the Stored Communications Act. That said, I would draw Your Honor's attention to a recent Second Circuit decision that came out recently, last month, after the conclusion of the briefing. It was United States v. Caraballo. There's only a Westlaw citation for it. It's 2016, WL-4073-248. And in that case, when the Second Circuit addressed this very issue of whether or not the pinging of a cell phone was justified by exigent circumstances, the Court there looked at the exigency, but also did consider whether or not the officer had acted reasonably. And part of that was looking at the officer's reliance on the same statute that applied here, 2703—2703-02-C-4. So that should be something that Your Honors would consider as to whether or not the officer acted reasonably and in good faith. But turning first to the exigent circumstances, it doesn't sound like there's really much of a dispute here. I mean, the core question in applying this doctrine is really whether or not the facts as they would be applied to a reasonable officer would show that there was an urgent need to take some action here. And Corporal Hyde had every reason to believe that Gilliam posed a serious danger and that urgent action was needed. The factors that are considered are the gravity of the offense, the nature of the offense, whether it's violent. You could determine the exigency on that factor alone. This is obviously a serious offense. In the form, it says missing child. That is what was provided to Sprint, that a missing child was being prostituted. It's also a violent offense. The prostitution of minors, courts have held that sexual exploitation of minors necessarily is violent. Violence in terms of the force that is used typically by pimps, by customers. The officer had reliable information that a crime was being committed. And simply because he did not put all of those details on the form doesn't make that any less the case and doesn't make it any less reasonable for him to have acted as he did. He had information from three witnesses, from a foster mother who was aware that Jasmine was with Gilliam, from a social worker who believed that Jasmine was being forced and credited Jasmine's mother, who said that the basis for her knowledge was Gilliam actually calling her and saying that he was prostituting Jasmine in New York. So there was very clear evidence as to the basis for Jasmine's mother's knowledge. It came directly from Gilliam's statements to her. As to whether or not there was a reasonable opportunity here to secure a warrant for the GPS location, I would submit that there wasn't. This was a live situation. There was an ongoing harm to a missing child. This is a child who was in New York, who was vulnerable, who was not in her surroundings. And again, pointing your honors to the recent decision, Second Circuit decision in Caraballo, exigency was found there unless, in that case, the officer had believed that there may be an imminent threat to law enforcement, to an undercover officer and an informant, based on a cooperating witness who was suspected to have been outed and was then killed. Here we actually have not just an imminent threat. We know of an actual harm that is occurring and is continuing to occur. So this was a live situation. There was simply not time at this point to get a warrant. There were three agencies involved in Maryland and NYPD and FBI in two states. The pinging here that was done, it happened in one day. It ceased immediately upon finding Gilliam and Jasmine. There was an active search not just relying on the pinging itself. The active search also involved Jasmine's mother, who said, I just got a phone call from this phone number. And they were able, the agents were able to go to Gilliam's house and from there determine that he was with her. At that point, the pinging was done, and they were able to find Gilliam and Jasmine walking on a public street just a few blocks away from the house. Now that's information, again, that he's on a public street. He's conveying that information to the world. There's not really a reasonable expectation of privacy in that particular information. Was there any evidence other than the information provided by the victim's mother that provided or that would have provided a probable cause to arrest a defendant for sex trafficking? Yes. So with respect to sex trafficking, each of the elements are met. The first element about knowingly recruiting, enticing, harboring, or transporting, that element is met both from the foster mother, who said that she was aware that Jasmine was in New York and had been with Gilliam, and that corroborates what Jasmine's mother said, is that she had been transported to New York. So that's the first element showing the transportation. Oh, it's both mothers. Both mothers, yes. As to the element of whether or not there was knowing or reckless disregard that forced fraud or coercion were used or that she was under the age of 18, law enforcement knew from Jasmine's social worker that the social worker believed that this was forced prostitution. That was the information he obtained. As well as the element of the alternative way of violating sex trafficking is that the person is under the age of 18. Well, law enforcement knew that from all three witnesses, that the victim was under the age of 18. And as to the person being caused to engage in a commercial sex act, that did come from Jasmine's mother, who learned from Gilliam that Gilliam was acting as her pimp. So that's the evidence from the three persons, two mothers and one social worker. That's correct. And as to those elements, there is no factual dispute. There is ample probable cause for a sex trafficking arrest at the time that Gilliam was arrested. Now, looking to Gilliam's claim that law enforcement could not confirm his identity to arrest him, well, that's unavailing for several reasons. Law enforcement had identified Gilliam's name at the time that he was the person with Jasmine. Gilliam's own mother had said that Gilliam was with a young girl just before he was arrested. Gilliam's phone is pinging at a location a few blocks from his mother's house, where they are ultimately found. Detective Ryan then recognized Jasmine from a photograph in the company of a man, which was Gilliam. Now, he then fled, which would be pretty good evidence of consciousness of guilt. And even if Detective Ryan himself was waiting for confirmation that the person that was with Jasmine, who he had identified, was in fact Gilliam, again, the law is clear that the knowledge of other law enforcement officers can be imputed to Detective Ryan as the arresting officer, and other officers were aware of what Gilliam looked like and were able to confirm that upon arriving on the scene. What do you make of Mr. Kolb's concern about the absence of an evidentiary hearing? Well, as to the first basis for an arrest that we just discussed, the sex trafficking arrest, again, there is no dispute. There was no reason for a hearing because there were no factual issues that were in dispute as to that arrest. As to the alternative reason for the arrest, the assault, again, I would submit that there were no material issues there that needed to be resolved at a hearing. The issues that Gilliam raises in his account of things, again, the only real dispute about whether or not the individuals identified themselves as police, and that really goes towards a self-defense argument by Gilliam, that it doesn't negate the probable cause from the perspective of the officer who objectively assessed the situation and determined that there was probable cause, that Gilliam was trying to avoid questioning or arrest, and that he clearly had intended to injure the detective when he, and it's not disputed, closed the door on his foot and then, during the time that he's in pain and screaming, does nothing to help him. There's a clear intent to harm there, whether it be of a police officer or knowing that he was a police officer. Even if he didn't know, accepting his version, that Detective Ryan was a police officer, that would still constitute probable cause for a misdemeanor, a physical injury caused to another person with intent or recklessly. Thank you very much. Thank you. Mr. Culp, you've reserved some time. Just a couple things very briefly. I would like the opportunity to look at that case, the opposing counsel. I had not seen that case, and if there's anything that I need to add, of course, we'll advise the court. I've made this point. You'll have the opportunity later today, and you'll have until tomorrow afternoon at the close of business. Okay. Thank you very much. You'll write a letter to the court on notice to opposing counsel. Sure. I was a little confused whether it gets into the good faith exception of the exclusionary rule, or that's sort of a concept that was part of the exigent circumstances argument, but I'll just read it rather than speculate openly here. And on that point, I just wanted to counsel makes a compelling case for the situation here, but the Fourth Amendment, we all pay a price for the Fourth Amendment, but it's there to protect our privacy, and the price is, of course, that sometimes relevant evidence is stricken from a case, but in the name of our privacy, sometimes we do enforce these things, and it doesn't sound fair, right, but I think this is a very dangerous power that the government has, sort of enforcing it jointly with phone companies to just track us down like this, and I think that more than just putting that one line in that form and business as usual should be done here. Thank you very much. Thank you very much. We'll reserve the decision, and we are adjourned. Court is adjourned.